IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**SHARON L. ARAGON,**

      **Plaintiff,**

vs.                                                                                            Civ. No. 20-1094 JFR

**KILOLO KIJAKAZI, Acting Commissioner,**
**Social Security Administration,**

      **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 12)[2] filed March 11, 2021, in connection with Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support,* filed May 20, 2021. Doc. 19. Defendant filed a Response on August 23, 2021. Doc. 22. Plaintiff filed a Reply on September 7, 2021. Doc. 23. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is well taken and shall be **GRANTED**.

### I. Background and Procedural Record

Plaintiff Sharon L. Aragon ("Ms. Aragon") alleges that she became disabled on October 4, 2018, at the age of forty-eight years and eleven months, because of sleep apnea, post-

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case. (Docs. 3, 5, 6.)

[2] Hereinafter, the Court's citations to Administrative Record (Doc. 12), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

traumatic stress disorder (PTSD), anxiety, depression, compressed disks cervical lumbar, asthma, pre-diabetic, left torn gluteus muscle, right torn glute labrum, and migraines.  Tr. 96, 97, 259, 262.  Ms. Aragon completed four or more years of college in August 1997.  Tr. 263.  Ms. Aragon was a logistics officer in the Army National Guard from 1987 to 2014.[3]  Tr. 264. 298.  She worked part-time as a yoga instructor from 2014 until October 2017.  Tr. 294-97.  Ms. Aragon stopped working on October 1, 2017, due to her medical conditions.  Tr. 262.

On February 13, 2019, Ms. Aragon protectively filed an application for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*.  Tr.235-36.  On April 15, 2019, Ms. Aragon's application was denied.  Tr. 995, 96-110, 1145-48.  It was denied again at reconsideration on November 15, 2019.  Tr. 111, 112-26, 150-53.  Upon Ms. Aragon's request, Administrative Law Judge (ALJ) Stephen Gontis held a hearing on May 6, 2020.  Tr. 31-63.  Ms. Aragon appeared telephonically at the hearing with attorney representative Feliz Martone.[4]  *Id*.  On May 22, 2020, ALJ Gontis issued an unfavorable decision.  Tr. 12-26.  On August 26, 2020, the Appeals Council issued its decision denying Ms. Aragon's request for review and upholding the ALJ's final decision.  Tr. 1-6.  On October 23, 2020, Ms. Aragon timely filed a Complaint seeking judicial review of the Commissioner's final decision.  Doc. 1.

---

[3] On July 15, 2015, the Department of Veterans Affairs determined that Ms. Aragon was totally and permanently disabled due to service-connected disabilities.  Tr. 233-35, 248-59.  Various treatment notes indicate service-connected/rated disabilities as follows:  PTSD 70%, sleep apnea 50%, paralysis of median nerve 30%, degenerative arthritis of the spine 20%, flat foot condition 10%, tinnitus 10%, paralysis of sciatic nerve 10%, foot pain 10%, limited motion of ankle 10%, limited flexion of knee 10%, traumatic arthritis 10%.  Tr. 799, 821, 901.

[4] Ms. Aragon is represented in these proceedings by Attorney Amber L. Denger.  Doc. 1.

## II. Applicable Law

### A. Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[5] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of his medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity

---

[5] Substantial work activity is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before." *Id.* "Gainful work activity is work activity that you do for pay or profit." 20 C.F.R. §§ 404.1572(b), 416.972(b).

>   ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
>   (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n.5, 96 L.Ed.2d 119 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.  **Standard of Review**

The Court reviews the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). A decision is based on substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118, or if it "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the [ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed."  *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005).  In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency.  *Langley*, 373 F.3d at 1118.

### III.  Analysis

The ALJ made his decision that Ms. Aragon was not disabled at step five of the sequential evaluation.  Tr. 25-26.  The ALJ determined that Ms. Aragon met the insured status requirements of the Social Security Act through December 31, 2019, and that she had not engaged in substantial gainful activity from her alleged onset date of October 4, 2018.  Tr. 17.  He found that Ms. Aragon had severe impairments of osteoarthritis degenerative joint disease of the right hip, degenerative disc disease of the cervical and lumbar spine, carpal tunnel syndrome, tinnitus, asthma, depression, anxiety, and PTSD.  *Id.*  The ALJ also found that Ms. Aragon had nonsevere impairments of obesity, migraines, and obstructive sleep apnea.  Tr. 18.  The ALJ determined, however, that Ms. Aragon's impairments did not meet or equal in severity any of the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 18-20.  Accordingly, the ALJ proceeded to step four and found that Ms. Aragon had the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(c) except she can frequently reach overhead and frequently reach in all other directions.  She can frequently handle, finger, and feel bilaterally.  The claimant can frequently climb ramps and stairs, balance, stoop, crouch, and crawl and occasionally climb ladders, ropes, or

5

>scaffolds. She can occasionally be exposed to dust, odors, fumes, and pulmonary irritants, extreme cold, vibration, and moderate noise. The claimant is able to understand, remember, and carry out more than simple but less than complex tasks consistent with semiskilled work. She is able to occasionally interact with supervisors and coworkers. The claimant is able to have infrequent, superficial interaction with the public. She is able to tolerate few changes in a routine work setting.

Tr. 20. The ALJ determined that Ms. Aragon could not perform any of her past relevant work, but that considering Ms. Aragon's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.[6] Tr. 24-25. The ALJ, therefore, concluded that Ms. Aragon was not disabled. Tr. 25-26.

In support of her Motion, Ms. Aragon argues that (1) the ALJ's RFC is contrary to the medical opinion evidence of record and not supported by substantial evidence; and (2) the ALJ erred at step five in that he failed to incorporate all limitations into the hypothetical question provided to the vocational expert and failed to clarify inconsistencies between the vocational expert testimony and the Dictionary of Occupational Titles. Doc. 19 at 8-27.

For the reasons discussed below, the Court finds that the ALJ's RFC related to Ms. Aragon's ability to do work-related physical activities is contrary to the medical opinion evidence and not supported by substantial evidence. As such, this case requires remand.

---

[6] The vocational expert testified that Ms. Aragon would be able to perform the requirements of representative occupations such as a Merchandise Marker, DOT #209.587-034, which is performed at the light exertional level with 200,000 jobs in national economy; and an Order Caller, DOT #209.667-014, which is performed at the light exertional level with 219,000 job in the national economy. Tr. 25.

A. **Medical Opinion Evidence Related to Ms. Aragon's Physical Impairments**

1. **Michael Slager, M.D.**

On April 3, 2019, nonexamining State agency medical consultant Michael Slager, M.D., reviewed the medical evidence record at the initial level of review. Tr. 100-01, 104-08.

Dr. Slager assessed that Ms. Aragon was capable of

> degraded light/sedentary level of exertional work with lift/carry 20 lbs./10 lbs., walk/stand 4 hours, and with postural and environmental limitations as delineated.[7] The clmnt should also be able to be allowed to change positions every 90 minutes for 5 minutes. The clmnt's RFC is not inconsistent with this RFC. The need to change positions a bit more frequent than customary work breaks would allow, is based upon the clmnt's allegations of difficulty sitting due to hip and thigh pain for prolonged periods.

Tr. 100-101. Dr. Slager explained, *inter alia,* that

> the clmnt's severe physical limitations result from LBP with lumber DDD/DJD on plain imaging, right hip pain, and left posterior thigh pain. The right hip pain is related to partial tear and tendinopathy of the right gluteal tendons at the greater trochanteric attachment and mild osteoarthrosis of the right hip with degenerative changes of the labrum. The left posterior thigh pain is related to moderate to high-grade tearing of the left hamstrings ischial insertion.

Tr. 100.

The ALJ found Dr. Slager's assessment partially persuasive. Tr. 22.

2. **Ross Clark, M.D.**

On November 2, 2019, Ms. Aragon presented to Ross M. Clark, M.D., for a consultative physical exam. Tr. 761-67. Ms. Aragon reported chief complaints of back pain, depression with anxiety, and migraines. Tr. 761. Dr. Clark noted various histories, *i.e.,* present illness, past medical, surgical, current medications, allergies, family and social. Tr. 761-763. On physical

---

[7] Dr. Slager assessed occasional climbing, balancing, stooping, kneeling, crouching and crawling and never climbing ladders. Tr. 105. Dr. Slager also assessed avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, and poor ventilation. Tr. 106.

7

exam, Dr. Clark indicated, *inter alia,* positive for mild tenderness to palpation thoracolumbar spine and paraspinous muscles; right hip tenderness to palpation and mild range of motion limitation; gait mild slow but coordinated; tandem gait slow with mild ataxia; not able to perform heel or toe walking.  Tr. 764, 766.  Dr. Clark assessed that

> [t]he number of hours the claimant can stand in an eight hour workday is 4 to 6 hours.  This is supported by physical exam findings of low back paraspinal muscular tenderness in addition to right hip tenderness and limitation of the range of motion of the right hip.  Gait abnormalities are present, as documented above. The number of hours the claimant can walk in an eight hour workday is 4 to 6 hours.  This is supported by the above findings.  The number of hours the claimant can sit in an eight hour workday is 8 hours.  This is supported by the above findings.
>
> The amount of weight the claimant can carry 20 pounds occasionally and 10 pounds frequently.  The amount of weight the claimant can lift 20 pounds occasionally and 10 pounds frequently.
>
> Based on today's exam the claimant should be able to reach, handle, feel, grasp, and finger frequently.
>
> Based on today's exam the claimant should be able to bend, stoop, crouch, squat occasionally.
>
> The claimant has no visual or communicative limitations and does not require an assistive device to ambulate.

Tr. 767.

The ALJ found Dr. Clark's assessment generally persuasive.  Tr. 23.

### 3.  Mark Werner, M.D.

On November 5, 2019, nonexamining State agency medical consultant Mark A. Werner, M.D., reviewed the medical evidence record at reconsideration.  Tr. 1121-23.  Dr. Werner assessed that Ms. Aragon could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk for a total of 5 hours in an 8-hour workday, and sit for about six hours.  Tr. 121.  Dr. Werner also assessed certain postural limitations, *i.e.,* occasional

climbing ramps, stairs, ladders, ropes, scaffolds; occasional stooping, kneeling, crouching and crawling; and frequent balancing.  Tr. 121-22.

The ALJ found Dr. Werner's assessment somewhat persuasive.  Tr. 23.

**B.     Legal Standard**

**1.     RFC Assessment**

Assessing a claimant's RFC is an administrative determination left solely to the Commissioner "based on the entire case record, including objective medical findings and the credibility of the claimant's subjective complaints." *Poppa v. Astrue*, 569 F.3d 1167, 1170-71 (10th Cir. 2009); *see also* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level or at the Appeals Council review level, the administrative law judge or the administrative appeals judge at the Appeals Council . . . is responsible for assessing your residual functional capacity."); *see also* SSR 96-5p, 1996 WL 374183, at *2 (an individual's RFC is an administrative finding).[8]  In assessing a claimant's RFC, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record.  *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2).  The ALJ must consider and address medical source opinions and give good reasons for the weight accorded to a treating physician's opinion.  20 C.F.R. §§ 404.1527(b), 416.927(b)[9]; SSR 96-8p, 1996 WL 374184, at *7.  If the RFC assessment conflicts with an opinion from a medical source, the ALJ must explain why the opinion was not adopted.  SSR 96-8p, 1996 WL 374184 at *7.  Further, the ALJ's "RFC assessment must

---

[8] The Social Security Administration rescinded SSR 96-5p effective March 27, 2017, only to the extent it is inconsistent with or duplicative of final rules promulgated related to Medical Source Opinions on Issues Reserved to the Commissioner found in 20 C.F.R. §§ 416.920b and 416.927 and applicable to claims filed on or after March 27, 2017.  82 Fed. Reg. 5844, 5845, 5867, 5869.

[9] The rules in this section apply for claims filed *before* March 27, 2017.  20 C.F.R. §§ 404.1527, 416.927.

include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7).  When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion with citations to specific medical facts and nonmedical evidence, the court will conclude that his RFC assessment is not supported by substantial evidence.  *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003).  The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review.  *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003) (unpublished).

      **2.**     **<u>Medical Opinion Evidence</u>**

An ALJ evaluates the persuasiveness of medical opinions based on: (1) the degree to which the opinion is supported by objective medical evidence and supporting explanation; (2) how consistent the opinion is with other evidence in the record; (3) the source's treating relationship with the claimant (i.e., how long/frequently the source treated the claimant and for what purpose); (4) whether the source was specialized on the impairment on which he or she is opining; and (5) any other factor tending to support or contradict the opinion. 20 C.F.R. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are "supportability ... and consistency." 20 C.F.R. §§ 404.1520c(a), §§416.920c(a).  The SSA does not give "any specific weight, including controlling weight, to any medical opinion(s)." *Id.*

In considering the persuasiveness of medical opinions, the ALJ "must discuss the weight he assigns." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012).  The ALJ is not required to discuss each factor articulated in the regulations; rather, the ALJ must merely explain his weighing decision with sufficient specificity so as to be capable of review.  *See Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004).  Put differently, if an ALJ rejects an opinion, he

"must then give 'specific, legitimate reasons for doing so.' " *Id.* (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003)).

### C. The ALJ's Explanations for Rejecting the Medical Opinion Evidence Regarding Ms. Aragon's Ability To Walk and/or Stand in an Eight-Hour Workday Are Insufficient and Not Supported by Substantial Evidence

The ALJ explained as to Dr. Slager's opinion that

> the objective medical evidence does not entirely support a four-hour standing/walking limitation or any need to alternate body positions. The consultative exam B5F indicated the claimant was able to stand for 4-6 hours and walk for 4-6 hours in an 8-hour workday, and that CE was conducted about two weeks prior to the claimant's minor hip surgery. The records indicate the claimant improved after hip surgery and claimant testified she is able to walk a mile on uneven ground and a mile and a half on uneven [sic] ground. She also spends 30 minutes per day on a stationary bike. Therefore, while there may have been a brief time when the claimant was limited to less than six hours stand/walk, the evidence does not support a durational limitation greater than that in the RFC.

Tr. 22. As for Dr. Clark's opinion, the ALJ explained that it was

> . . . generally consistent with the examination and the other medical evidence of record. The objective examination and other evidence, as described in detail above, supports a finding that the claimant is capable of standing/walking six hours of an eight-hour workday.

Tr. 23. Finally, as for Dr. Werner's opinion, the ALJ explained that it was

> generally consistent with the objective, longitudinal medical evidence and well explained. I agree that the claimant has been capable of performing light exertion and light work; however, the longitudinal objective medical evidence does not support a limitation to five hours standing/walking or any need to alternate body positions. The consultative exam at B5F indicated the claimant was able to stand for 4-6 hours and walk for 4-6 hours in an 8-hour workday, and that CE was conducted about two weeks prior to the claimant's minor hip surgery. The records indicate the claimant improved after hip surgery and the claimant testified she is able to walk a mile on uneven ground and a mile and a half on uneven [sic] ground. She also spends 30 minutes per day on a stationary bike. Therefore, while there may have been a brief time when the claimant was limited to less than six hours stand/walk, the evidence does not support a durational limitation greater than that in the RFC. In November 2019, Dr. Ross Clark conducted a consultative medical evaluation ( Exhibit B5F). Examinations were normal except for mild tenderness in the thoracolumbar spine and right hip with mild range of motion limitations. The

>claimant had normal strength in all extremities, coordinated gait without an assistive device, and normal sensation and reflexes. Dr. Clark opined that claimant could lift and carry 20 pounds, stand four to six hours in an eight-hour workday, walk four to six hours, and sit eight hours (Exhibit B5F, page 8). In December 2019, she was doing well following her right hip surgery in November with full weight-bearing status (Exhibit B6F), page 16). In January 2020, she was doing well with full weight-bearing and riding a stationary bicycle 30 minutes per day (Exhibit B6F, pages 19-23). In January 2020, x-rays of the right hip showed mild degenerative changes (Exhibit B6F, page 1). In February 2020, the claimant continued to do well. She was riding an exercise bicycle and able to go hiking without problems (Exhibit B6F, pages 24-26).

Tr. 23.

In sum, the ALJ determined and explained that Ms. Aragon's November 15, 2019, hip surgery and post-operative improvement rendered all three medical opinions unpersuasive with respect the assessed limitations related to Ms. Aragon's ability to stand and/or walk in an eight-hour workday.

Ms. Aragon argues, *inter alia*, that the ALJ inappropriately handled Dr. Clark's opinion by mischaracterizing the walking and standing limitations in order to fit the RFC. Doc. 19 at 14-15. She argues because Dr. Clark assessed a range in which she could walk and/or stand in an eight-hour day and that it was improper for the ALJ to ignore the lower range and adopt the higher range when the RFC must reflect an individual's maximum ability to do sustained work activities on a regular and continuing basis, *i.e.,* in this case Dr. Clark assessed she could walk 4 hours on some days while up to 6 on others. *Id.* Mr. Aragon further argues that the ALJ improperly used Dr. Clark's opinion to discredit the nonexamining State agency medical consultant opinions when their findings were largely consistent. *Id.* at 16-17. Last, Ms. Aragon argues that in relying on post-operative hip surgery treatment notes to reject the medical opinion evidence, the ALJ improperly relied on certain evidence favorable to a finding of nondisability while ignoring probative evidence to the contrary. *Id.* at 17.

The Commissioner asserts that the ALJ reasonably interpreted Dr. Clark's assessment to mean that Ms. Aragon could stand and/or walk for six hours in an eight-hour workday and not, as Ms. Aragon argues, some combination of 4-6 hours. Doc. 22 at 10-11. The Commissioner further asserts that the ALJ properly noted the inconsistency between the State agency medical consultants' findings and the improvement Ms. Aragon experienced after her hip surgery, as evidenced in her activities of daily living and post-surgery treatment notes. *Id.* at 13-14. As such, the Commissioner contends that the RFC regarding Ms. Aragon's ability to walk and/or stand in an eight-hour workday is supported by substantial evidence. *Id.*

Here, it is undisputed that the medical opinion evidence regarding Ms. Aragon's ability to walk and/or stand during an eight-hour workday is consistent and supported by the medical evidence record and/or physical exam findings. It is also undisputed that the medical opinion evidence supports that Ms. Aragon is unable to meet the requirements necessary to perform light work as the ALJ assessed.[10] Indeed, the ALJ does not discount the medical opinion evidence on the basis of inconsistency or insupportability, *i.e.,* "there may have been a brief time when the claimant was limited to less than six hours stand/walk." Tr. 22. Instead, the ALJ rejects the medical opinion evidence by concluding that Ms. Aragon's November 2019 hip surgery improved her hip pain such that the limitations assessed regarding her ability to stand and/or walk in an eight-hour workday were no longer supported. The Court is not persuaded.

The Court finds that the ALJ's explanations for rejecting all three medical opinions regarding Ms. Aragon's ability to stand and/or walk in an eight-hour workday are insufficient

---

[10] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. 20 C.F.R. § 404.1567(b). "Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251, at 6.

13

and not supported by substantial evidence. This is error. *Langley,* 373 F.3d at 1119. For example, the ALJ characterizes Dr. Clark's physical exam as completely normal but for some mild tenderness in the thoracolumbar spine and right hip with mild range of motion limitation. Tr. 23. However, Dr. Clark also noted that Mr. Aragon's gait was mildly slow, that her tandem gait was slow with mild ataxia, and that Ms. Aragon was not able to perform heel or toe walking. Tr. 766. Further, Dr. Clark's assessed limitation regarding Ms. Aragon's ability to walk and/or stand was not just based on hip pain and limited range of motion, but on low back paraspinal muscular tenderness and gait abnormalities. *Id.* Thus, the ALJ's speculative conclusion that post-operative improvement in Ms. Aragon hip pain rendered Dr. Clark's opinion unsupported fails to take into account, or address, the other bases for Dr. Clark's assessed limitation.[11]

Next, the ALJ relied heavily on post-operative physical therapy notes demonstrating that Ms. Aragon was full weight-bearing and riding a stationary bike as a basis for rejecting the medical opinion evidence. However, in doing so, the ALJ engaged in improper picking and choosing of the medical evidence. This is error. *Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (quotation omitted) ("It is improper for the ALJ to pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). For instance, on December 17, 2019, and February 2, 2020, Ms. Aragon attended physical therapy sessions at which it was noted that she was "full weight being," *i.e.,* no longer using crutches, and was riding a stationary bike daily. Tr. 784, 791. The ALJ favorably cites this

---

[11] Dr. Slager similarly noted that Ms. Aragon's standing and/or walking limitation resulted not just from right hip pain, but from lumbar back pain with lumber degenerative disc disease and degenerative joint disease on plain imaging and left posterior thigh pain. Tr. 100. Thus, the ALJ's rejection of Dr. Slager's assessment that Ms. Aragon was limited to standing and/or walking only four hours in an eight-hour workday based solely on alleged improvement of hip pain postoperatively also fails to account for, or address, the other bases for Dr. Slager's assessed limitation. The ALJ also rejected Dr. Slager's assessment that Ms. Aragon should be allowed to change positions every 90 minutes for 5 minutes based on difficulty in sitting due to both hip pain and thigh pain. Tr. 100. Even assuming an improvement in hip pain, the ALJ fails to address this limitation in light of Ms. Aragon's thigh pain.

information. Tr. 23. However, the same physical therapy notes indicated that Ms. Aragon reported continuing pain anterior right hip of 5/10 and 4/10, respectively. Tr. 785, 792. On physical exam, the physical therapist noted on both dates pain and tenderness with palpation at the anterior right hip as well as mild swelling. *Id.* The physical therapist also observed on both dates that Ms. Aragon ambulated with a mild limp. *Id.* Moreover, although the ALJ correctly notes that Ms. Aragon was riding a stationary bike as part of her home physical therapy program, the ALJ failed to note that she was doing so without resistance/tension.[12] [13]

Last, the ALJ improperly mischaracterizes Ms. Aragon's testimony as a basis for rejecting the medical opinion evidence. The ALJ states that Ms. Aragon testified she is able to walk a mile on uneven ground and a mile and half on even ground and is "hiking without problems." Tr. 23. Ms. Aragon's testimony was as follows:

| | |
|---|---|
| ALJ: | Did you have surgery on your hip? |
| Claimant: | I did. |
| ALJ: | When was that? |
| Claimant: | This was November 15th. |
| ALJ: | November 15th. |
| Claimant: | 2019. |
| ALJ: | Of 2019. Okay. |
| Claimant: | Yes. |
| ALJ: | So, about six, seven months ago. |

---

[12] Ms. Aragon was given permission on February 26, 2020, to add some light resistance to her home stationary cycle program. Tr. 794.

[13] On January 20, 2020, orthopedic surgeon Dr. Becker indicated that Ms. Aragon's right hip was 50% improved with some residual lateral and anterior aching. Tr. 829. He encouraged Ms. Aragon to continue physical therapy and using her stationary bike, but that she was to avoid active hip flexions strengthening. Tr. 829.

Claimant: Yes.

ALJ: Okay. And how is your hip doing?

Claimant: It is because of knee pains. I wake up with it in the morning and throughout the day I have pains. *So, if I am standing too long my hip and my back start hurting or if I am sitting too long, I get the hip pain.*

ALJ: What did they do to your hip, what kind of surgery was it?

Claimant: They removed my labrum.

ALJ: Okay. Which hip was it?

Claimant: My right hip.

ALJ: Okay.

Claimant: And the other thing I was going to say. I can't sleep to my right side. So, if I happen to roll over in the middle of the night I start feeling like throbbing pain. If I happen to lay on that side.

ALJ: Okay. It looks like they did some physical therapy with you.

Claimant: Yes. I am finishing that.

ALJ: And it looks like you are [doing] some hiking and some stationary bike riding.

Claimant: Not so much hiking. I did try it. Like two times and it was maybe, maybe a mile, half a mile to a mile. So, it wasn't a lot but I have gone out to walk where it wasn't a flat surface and so, but it wasn't up mountains or anything. It was just uneven paths and then my stationary bike should – with no tension. I do for 30 a minutes a day.

ALJ: Okay. Is all that starting to help your hip?

Claimant: It helps to actually. The biking helps. So, there is like more mobility in the hip, *but the walking, I feel the strain on my glut and sometimes I get like sharp pains down to my knee on my right side.*

ALJ: Okay.

Claimant: *My glut and my – like on the side hip.*

16

| | |
|---|---|
| ALJ: | Okay.  So, you have indicated that you have done a little bit of hiking, half a mile to a mile on trail basically.  It sounds like not like sharp up hill but sort of like trails. |
| Claimant: | Right, right. |
| ALJ: | Okay.  So, on even ground how far to you think you could walk? |
| Claimant: | I would say probably about a mile.  Maybe a mile and a half and I have done that for about a mile on even ground. |
| ALJ: | Okay. |
| Claimant: | So, *before the end I start to get in some pain on the hip* or – |
| ALJ: | Got it. . . . |

Tr. 36-37 (emphasis added).  Notably, Ms. Aragon testified that since her surgery six a half months before the hearing, on November 15, 2019, she had twice attempted walking on an uneven path, characterized as hiking, and that she had been able to walk, at least once, on even ground for about a mile.  *Id.*  Ms. Aragon also testified that she experienced pain either during or after doing both.  *Id.*  Given the full context of Ms. Aragon's testimony, it was improper for the ALJ to rely on mischaracterized and partial testimony as a basis for rejecting the medical opinion evidence that Ms. Aragon was limited in her ability to walk and/or stand in an eight-hour workday.

In sum, the Court finds that the ALJ failed to provide explanations supported by substantial evidence for rejecting all of the medical opinion evidence regarding Ms. Aragon's ability to stand and/or walk during an eight-hour workday day.  This is error.  *Clifton,* 79 F.3d at 1009.  Further, because the ALJ failed to provide an adequate discussion describing how the evidence supports his consideration of their opinions, the Court concludes that the RFC

regarding Ms. Aragon's ability to perform light exertional work is not supported by substantial evidence. *Southard*, 72 F App'x at 784-85.

### D. <u>Remaining Issues</u>

The Court will not address Ms. Aragon's remaining claims of error because they may be affected by the ALJ's treatment of this case on remand. *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

### IV. <u>Conclusion</u>

For the reasons stated above, Ms. Aragon's Motion to Reverse or Remand Administrative Agency Decision and Memorandum in Support (Doc. 19) is **GRANTED.**

_____
**JOHN F. ROBBENHAAR**
**United States Magistrate Judge,**
**Presiding by Consent**